IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARBARA C. obo,　　　　　　　　　*
BRUCE C.　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Plaintiff,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　vs.　　　　　　　　　　　　*　　　Civil Action No.  ADC-20-3332
　　　　　　　　　　　　　　　　*
KILOLO KIJAKAZI,　　　　　　　　*
Acting Commissioner,　　　　　　　*
Social Security Administration　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　Defendant.　　　　　　*
　　　　　　　　　　　　　　　　*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

On November 17, 2020, Barbara C. on behalf of Bruce C. (deceased) ("Plaintiff")
petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny
his claim for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security
Income ("SSI") under Title XVI of the Social Security Act ("the Act"). ECF No. 1 ("the
Complaint"). Plaintiff and Defendant each filed motions for summary judgment (ECF Nos. 13, 16)
on July 20, 2021 and September 30, 2021, respectively.[1] Plaintiff further responded in opposition.
ECF No. 17. After considering the parties' motions and responses thereto, the Court finds that no
hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion
for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment
(ECF No. 16) is DENIED, the SSA's decision is REVERSED, and the case is REMANDED to
the SSA for further analysis in accordance with this Opinion.

---

[1] This case was assigned to United States Magistrate Judge A. David Copperthite for all
proceedings on November 30, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and
302. ECF Nos. 3, 4.

## PROCEDURAL HISTORY

On July 13, 2015, Plaintiff filed both a Title II application for DIB and a Title XVI application for SSI, alleging disability since July 5, 2014. ECF No. 10 at 152. His claim was denied initially on December 2, 2015, and upon reconsideration on April 19, 2016. *Id.* Subsequently, Plaintiff requested a hearing, and on November 8, 2017, an Administrative Law Judge ("ALJ") presided over a hearing. *Id.* On August 1, 2018, the ALJ rendered a decision that Plaintiff was not disabled under the Act. *Id.* at 165. Plaintiff then requested a review of the ALJ's decision, which the Appeals Council granted on November 27, 2019. *Id.* at 6. The Appeals Council issued its own decision concluding Plaintiff was not disabled. *Id.* Thus, the Appeals Council's decision became the final decision of the SSA. *See* 20 C.F.R. §§ 404.981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On November 17, 2020, Plaintiff then filed the Complaint in this Court seeking judicial review of the SSA's denial of his disability applications. ECF No. 1.

## STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d

2

204, 207 (4th Cir. 2015) (citations omitted). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB or SSI, a claimant must establish that he is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made,

3

the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of his age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Claimant's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence

4

shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). At this second step, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support Plaintiff's subjective evidence of pain "improperly increase[s] [his] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. 20 C.F.R. §§ 404.1520, 416.920; *see Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is

5

other work that the claimant can do, given his age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, he is not disabled. If the claimant cannot perform other work, he is disabled.

## ALJ AND APPEALS COUNCIL DETERMINATION

The ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 5, 2014. ECF No. 10 at 154. The Appeals Council agreed with the ALJ's step one finding. *Id.* at 6. At step two, the Appeals Council found that Plaintiff had severe impairments of motor vehicle accident residuals, including pelvic and rib fractures and splenectomy, anxiety and affective disorders, and organic brain syndrome. *Id.* at 6–7. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 157. The Appeals Council agreed. *Id.* at 7. The Appeals Council then determined that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b), except he can occasionally perform postural activities; can never climb ladders, ropes, or scaffolds; can perform simple, routine, repetitive tasks in two-hour increments in a stable work environment; but cannot work at a production rate or pace.

*Id.* at 8. At step four, the Appeals Council found that Plaintiff was unable to perform past relevant work as an x-ray technician. *Id.* Finally, at step five, the Appeals Council concluded that "there are a significant number of jobs in the national economy which [Plaintiff] could perform," considering Plaintiff's age, education, work experience, and RFC. *Id.* Thus, the Appeals Council concluded that Plaintiff "is not disabled as defined in [the Act]." *Id.* at 10.

6

<u>**DISCUSSION**</u>

Plaintiff raises three arguments on appeal: (1) the Commissioner's step-five conclusion is unsupported by substantial evidence because the ALJ failed to define "non-production rate work" in the hypothetical to the Vocational Expert ("VE"); (2) the Commissioner's RFC determination is not supported by substantial evidence because the ALJ and Appeals Council failed to consider whether Plaintiff demonstrated with objective medical evidence an impairment capable of causing the degree and type of pain he alleged; and (3) the Commissioner erred at step three by failing to consider whether Plaintiff's impairments met or equaled the Listing 11.18 criteria. ECF No. 13-2 at 10–27.

The Commissioner employs VEs to offer evidence as to whether Plaintiff possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)–(c), 416.960(b)–(c). The VE may respond to a hypothetical about a person "with the physical and mental limitations imposed by the claimant's medical impairment(s)." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). "[I]n order for a [VE's] opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (alterations in original) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).

The U.S. Court of Appeals for the Fourth Circuit has explained that remand is appropriate where the ALJ fails to define terms in a VE hypothetical that have "no established regulatory definition" *Perry v. Berryhill*, 765 F. App'x 869, 870 (4th Cir. 2019) (concerning the phrase "non-production oriented work setting"); *Thomas v. Berryhill*, 916 F.3d 307, 312 (concerning the phrase "production rate or demand pace"). In *Thomas*, the Fourth Circuit concluded that the ALJ's

decision that the plaintiff could not perform work "requiring a production rate or demand pace" did not give sufficient information to understand its meaning. 916 F.3d at 312. Accordingly, it was "difficult, if not impossible" to determine whether the RFC was supported by substantial evidence.[2] *Id.*

This Court, relying on *Thomas*, similarly concluded that an ALJ's failure to define "production pace" in a hypothetical to a VE warranted remand. *Henry G. v. Kijakazi*, No. CV TJS-20-2142, 2021 WL 4963249, at *2 (D.Md. Oct. 26, 2021). The Court explained it was unable to determine what the ALJ meant by the term and thus to discern whether the RFC was supported by substantial evidence. *Id.* (quoting *Thomas*, 916 F.3d at 312). Where it is unclear whether the VE and ALJ shared a common understanding of the phrase, and the ALJ failed to define the term in the hypothetical, remand is proper. *Id.* at *3. Further, in *Teresa D. v. Kijakazi*, this Court explained that a restriction of "not at a production pace" was "directly analogous" to the terminology used in *Thomas*. No. DLB-20-852, 2021 WL 3858084, at *3 (D.Md. Aug. 30, 2021) (citations omitted). The Court rejected the argument that the term was "common enough" for the Court to discern its meaning, explaining that the "term is not defined in the regulations or the Dictionary of Occupational Titles," and the definition is "the critical issue in this case." *Id.* (citations omitted).

Here, like in *Teresa D.*, the phrases used—"production rate or pace" and "non-production rate"—are directly analogous to the language used in *Perry* and *Thomas*. Neither has a regulatory definition nor are they listed in the Dictionary of Occupational Titles. *Perry*, 765 F.App'x at 872. *See* ECF No. 10 at 80. In fact, the ALJ and VE specifically discussed that the term was not defined, and the VE answered according to his own understanding. ECF No. 10 at 80. However,

---

[2] While there were multiple issues in *Thomas* that required remand, "the Fourth Circuit has subsequently remanded solely for an ALJ's failure to define similar ambiguous terms in the RFC determination." *Teresa D.*, 2021 WL 3858084, at *2 (citing *Perry*, 765 F. App'x at 873).

the ALJ never made clear to the VE what he intended, the VE never explained how he defined the term, and the Appeals Council, then in adopting another phrase, failed to provide any context for what it intended in limiting "production rate or pace."[3] *See id.* at 78–80. "For this reason, the Court cannot assume that the meaning the ALJ ascribed to the term was understood by the VE." *Henry G.*, 2021 WL 4963249, at *2.

Defendant contends that the language here of "non-production rate" is distinguishable from the "hybrid term" at issue in *Thomas*. *See* ECF No. 16-1 at 6. The Court disagrees. As with the language in *Teresa D.*, the language used here is in fact "directly analogous." Moreover, the ALJ's posed hypothetical suffers the same error as in *Thomas*—it lacked any description of what was meant by "non-production rate" and instead relied on the VE's unstated understanding of the term. I agree with Plaintiff that the Appeal Council's decision and the ALJ's posed hypothetical run afoul of *Thomas*, as this Court is unable to review for substantial evidence and "cannot assess whether [the] limitation . . . properly accounts for [Plaintiff's] impairment." *See Perry*, 765 F.App'x at 870. Accordingly, remand is warranted.

Because I remand on this ground, I do not consider Plaintiff's additional arguments that the RFC was not supported by substantial evidence and that the ALJ and Appeals Council erred at step three by failing to consider whether Plaintiff's impairment met or equaled the Listing 11.18 requirements. ECF No. 13 at 17–27. On remand, the ALJ may consider these arguments and make any required adjustments to the opinion.

---

[3] To the extent Defendant argues that the ALJ defined "non-production rate" by saying it was "not timed work or work requiring quotas in a stable environment," I find that argument inconsistent with the conversation between the ALJ and VE discussing the lack of a definition for the term. *See* ECF No. 78–80. Moreover, even assuming *arguendo* that the ALJ did intend that phrase to define the term, the Appeals Council still failed to define the new term used in Plaintiff's RFC making it impossible for this Court "to understand what those terms mean." *See Thomas*, 916 F.3d at 312.

## CONCLUSION

The Court thus concludes that the Commissioner failed to provide substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act. Therefore, based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 16) are DENIED. The decision of the SSA is REVERSED due to inadequate analysis. This case is REMANDED for further proceedings in accordance with this opinion.

Date: 9 December 2021

A. David Copperthite
United States Magistrate Judge